UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

July 31, 2019

LETTER TO COUNSEL

> RE: *Kevin B. v. Commissioner, Social Security Administration*;
> Civil No. SAG-18-2042

Dear Counsel:

On July 6, 2018, Plaintiff Kevin B. petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny his claim for disability benefits. ECF 1. I have considered the parties' cross-motions for summary judgment, and Plaintiff's reply. ECF 18, 22, 24. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, grant the SSA's motion, and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Plaintiff protectively filed a claim for Disability Insurance Benefits on December 22, 2014, alleging a disability onset date of August 14, 2013. Tr. 201-02. His claim was denied initially and on reconsideration. Tr. 118-21, 123-24. A hearing was held on June 22, 2017, before an Administrative Law Judge ("ALJ"). Tr. 35-91. Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 12-29. The Appeals Council ("AC") denied Plaintiff's request for review, Tr. 1-5, so the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ found that, during the relevant period, Plaintiff suffered from the severe impairments of "cardiac dysrhythmias/atrial fibrillation, dysfunction of major joints/osteoarthritis, status-post right hip arthroplasty, and obesity." Tr. 15. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a), except he occasionally can climb ramps and stairs, but he never can climb ladders, ropes, or scaffolds; he occasionally can stoop, kneel, crouch, and crawl; he never can balance on uneven surfaces; and he must avoid all exposure to unprotected heights and moving, mechanical parts.

Tr. 20. After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform his past relevant work as a police clerk, and that, therefore, he was not disabled. Tr. 27-29.

In support of his appeal, Plaintiff advances two primary arguments: (1) that the ALJ erred at step three by failing to resolve discrepancies between her findings and the medical evidence relating to Plaintiff's ability to ambulate, ECF 18-1 at 8-18; and (2) that the ALJ's RFC determination did not contain an adequate function by function analysis, as it pertained to Plaintiff's mental limitations, ECF 18-1 at 18-22. Each argument lacks merit for the reasons discussed below.

First, Plaintiff asserts that the ALJ should have found him to meet the criteria of Listings 1.02A and 1.03. Tr. 19-20; ECF 18-1 at 8-18. Plaintiff bears the burden, at step three, to show that all criteria of a listing are met or equaled. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (stating claimants bear the burden in steps one through four of evaluating disability claims, where step three involves deciding if the impairment meets or medically equals the listings) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam)). Both Listings 1.02A and 1.03 require proof that a claimant has an "inability to ambulate effectively," which generally requires evidence of "the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . . [E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 1.00(B)(2)(b), 1.02A, 1.03. Section 1.00(B)(2)(b) provides some other examples of "inability to ambulate effectively," including in relevant part "the inability to walk a block at a reasonable pace on rough or uneven surfaces." *Id.* In this case, the ALJ evaluated Plaintiff's hip condition under Listings 1.02A and 1.03, but determined that Plaintiff did not meet his burden to show an "inability to ambulate effectively," because "the claimant does not use an assistive device, and he has a normal gait." Tr. 19. Plaintiff argues that the ALJ's determination regarding the listings contradicts the ALJ's subsequent finding that he "can never balance on uneven surfaces," Tr. 20, because the inability to walk on uneven surfaces would demonstrate an inability to ambulate effectively.

Plaintiff's argument is unpersuasive. The ALJ unequivocally stated, in multiple areas of the opinion, that the ALJ did not find any impairment in Plaintiff's ability to ambulate. *See, e.g.*, Tr. 19 ("the claimant does not use an assistive device, and he has a normal gait."); Tr. 20 ("the claimant's gait is normal and steady despite his obesity. He does not use an assistive device for mobility."); Tr. 24 ("As of his August 2014 orthopedic appointment [following surgery in early July 2014], the claimant was ambulating with a cane. In October 2014, the claimant was using no assistive device, and he was ambulating normally.") (internal citations omitted); *Id.* ("In June 2015, at his one-year follow-up appointment . . . he did not describe any issues with ambulating and falling. On examination, the claimant ambulated with a normal gait."). Although Plaintiff attempted to marshal record evidence to demonstrate his difficulties with ambulation and use of assistive devices, all of the records cited were dated between Plaintiff's surgery on July 7, 2014, and approximately eight weeks later in September, 2014. ECF 18-1 at 15-16. The fact that Plaintiff had a brief period of difficulty with ambulation immediately following his hip replacement does not suggest the type of impairment meeting or equaling listing-level severity, particularly considering the records showing his full recovery and normal ambulation as of October, 2014.

Moreover, the ALJ explained, albeit in a somewhat cryptic fashion, that she intended the "balancing" restriction to address Plaintiff's cardiac issues and dizziness, not any inability to walk. Tr. 27 ("His cardiac issues together with the warfarin therapy and the occasional dizziness appropriately call for the environmental restrictions noted in the residual functional capacity."). While one could debate whether a restriction from "balancing on an uneven surface" is traditionally viewed as an "environmental restriction," it is generally analogous to preventing Plaintiff from "exposure to unprotected heights and moving mechanical parts." *See* Tr. 20. The ALJ's RFC assessment did not include any traditional environmental restrictions such as exposure to temperatures, dust, or fumes, and thus it is logical to interpret the restrictions noted above as the "environmental" restrictions referenced by the ALJ. In addition, Plaintiff's reading of the provision, interpreting "balancing" to include "walking," ECF 18-1 at 14, would make the RFC assessment internally inconsistent, because a person who could never walk on uneven surfaces certainly could not "occasionally . . . climb ramps and stairs." Tr. 20. Thus, while it is admittedly unclear what type of "balancing" the ALJ intended to prohibit, and while it would have been preferable to explain exactly which RFC provisions constituted the "environmental restrictions," a fair reading of the ALJ's explanation demonstrates that the reference to uneven surfaces was intended to protect the Plaintiff from dizziness and falls, and did not intend to address an ambulatory issue that the ALJ expressly disavowed multiple times.

Plaintiff's second argument is that the ALJ failed to provide an adequate function-by-function analysis of his impairments, specifically as to the symptoms relating from his anxiety, such as impaired insight and judgment. ECF 18-1 at 20-21. However, the ALJ engaged in a robust analysis of Plaintiff's mental health records and the limitations he asserted. Tr. 16-19 (summarizing medical treating and examining records pertaining to mental health treatment, specifically noting long gaps between treatment appointments, relatively mild GAF scores, and opinions from treating sources suggesting no impact on his ability to perform simple work); Tr. 21-22 (detailing inconsistencies between Plaintiff's asserted mental health symptoms and his activities reported during therapy appointments). After reviewing that evidence, the ALJ concluded, "The claimant's mental health impairments do not require restrictions as, based on the claimant's level of functioning as described particularly in the record evidence, including providing assistance to his disabled brother, going to church, attending events with friends, communicating with friends, engaging in social media, engaging in volunteer activity, doing household chores and other chores, and caring for himself, he has no more than mild limitations in that regard." Tr. 27. Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971). Even if there is other evidence that may support Plaintiff's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In considering the entire record, and given the evidence outlined above, I find the ALJ performed the required function-by-function analysis as it pertained to Plaintiff's mental health condition, and concluded that no specific limitations were needed in the RFC assessment.

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF 18, is DENIED, and Defendant's Motion for Summary Judgment, ECF 22, is GRANTED. The SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing order follows.

                                      Sincerely yours,

                                      /s/

                                      Stephanie A. Gallagher
                                      United States Magistrate Judge